## FREDERICK BRYTON ET AL.
### v.
## LAWRENCE MARSTON.

33  211
51  396
148s 202

*Sales—Play — Written Contract — Conditions—Breach — Forfeiture—Damages—Penalty.*

1.  The language of the parties to a contract touching the construction of a clause therein stating the damages to be paid in case of the breach thereof, is not controlling, and if a strict construction of the terms used would result in oppression or in contravening the intention of the parties the courts may inquire into the damages sustained and make compensation for such injury the measure of damages for the breach.

2.  Where a party agrees in writing to do several things, one of which is to pay a sum of money, and in case of a failure to perform any or either of the stipulations set forth, to pay a larger sum as liquidated damages, the larger sum is to be regarded in the nature of a penalty, and in the absence of evidence of actual damages in an action for a breach of the agreement, nominal damages only may be recovered.

3.  In a suit upon a contract of sale of a play for breach of conditions thereof, it being provided that the agreement of sale should become null and void in case the same was not produced, and that it should be returned, this court holds that for the failure to so return, a recovery can be had of its reasonable value.

[Opinion filed May 29, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

An action of assumpsit was brought by appellee against appellants upon the following contract:

"Articles of agreement made the 27th day of August, 1884, between Nate Salsbury and Frederick Bryton, of the city, county and State of New York, parties of the first part, and Lawrence Marston, of the same place, party of the second part, witnesseth as follows: The parties of the first part agree to purchase from the party of the second part a certain original play or drama, written and composed by the said party of the second part, which said play or drama was duly copyrighted with the Librarian of Congress of the United States at Washington, D. C., under the title of 'Walton's Home,' by the said party of the second part, in the year 1884. And the said party of the second part agrees to sell to the parties of the first part all the right, title and interest whatsoever to the said drama entitled 'Walton's Home,' and the manuscript and copyright thereof, for the sum of $3,000, good and lawful money of the United States, upon the following conditions: The said parties of the first part shall, upon the delivery to them of the manuscript and acting parts of said play or drama entitled 'Walton's Home,' pay to said party of the second part the sum of $200, and the further sum of $10 per night for each and every night of the actual performing in any theater of the said play or drama, and the sum of $5 for each and every afternoon and matinee performance of the same, until the said sums shall aggregate the sum of $3,000, when the said play or drama shall become the absolute property of the said parties of the first part. That the said parties of the first part shall have the exclusive right to make any and such alterations in the said play or drama, entitled 'Walton's Home,' as they shall deem meet for the proper production of the same. That they shall use the name of the party of the second part as the author of the said play or drama, and print the same upon their play bills and advertisements.

Bryton v. Marston.

"That the said party of the second part, his heirs and assigns, covenants and agrees to and with the parties of the first part, their heirs and assigns, that he, the party of the second part, his heirs and assigns, will not at any time hereafter engage, directly or indirectly, with any person or persons, other than the said parties of the first part, their heirs and assigns, in producing in any manner, at any theater or elsewhere, the said play or drama entitled ' Walton's Home,' or in selling or disposing of the same. And the said party of the second part, for himself, his administrators and assigns, doth promise, covenant and agree to and with the parties of the first part, their heirs and assigns, by these presents, that they, the said parties of the first part, their administrators and assigns, shall and lawfully may, from time to time, and at all times hereafter, peaceably and quietly have, hold and possess and enjoy the said play or drama, entitled ' Walton's Home,' hereby sold, or intended to be, without the lawful hindrance or molestation of the said party of the second part, his administrators and assigns, or of any person or persons whatsoever, by or with his or their act, consent, privity or procurement. That the said parties of the first part, their heirs and assigns, bind themselves to and with the said party of the second part, his administrators and assigns, that they will produce the said play or drama of ' Walton's Home ' before the public on or before the 1st day of October, 1885, or in failure thereof, then this agreement of sale shall become null and void, and all moneys paid by the said parties of the first part to the party of the second part shall be forfeited to him, and the manuscript of said play shall be returned. That the said parties of the first part, after the production of said play or drama, entitled ' Walton's Home,' shall pay to the party of the second part, his administrators and assigns, the said sum of $10 for each and every night performance, and said sum of $5 for every afternoon or matinee performance, each and every week, by post-office order, or in such other way as shall be mutually agreed upon. And it is expressly understood that the stipulation of sale aforesaid are to apply to and bind the administrators and assigns of the respective

parties, and in case of failure to perform any of the agreements of said sale, the parties bind each unto the other in the sum of $5,000, as fixed and settled damages to be paid by the failing party or parties.

"In witness whereof we have set our hands and seals the day and year first above written.

(Signed)      "SALSBURY & BRYTON.   [SEAL,]

"LAWRENCE MARSTON.   [SEAL.]"

To the declaration there was a plea of the general issue, and the case was tried by the court without a jury.

Plaintiff's evidence showed that he was paid the $200 mentioned in the contract, and nothing more, and that defendants had never produced the play, and had not returned the manuscript to him.

The court found for the plaintiff and assessed the damages at $5,000, to which appellants duly excepted, and from the judgment entered on such finding this appeal is prosecuted.

Mr. A. B. JENKS, for appellants.

Messrs. CUNNINGHAM & KEILY, for appellee.

MORAN, J. The question presented is whether the clause of the contract which provides that "in case of failure to perform any of the agreements of said sale, the parties bind each unto the other in the sum of $5,000, as fixed and settled damages, to be paid by the failing party or parties," is to be treated as creating a penalty or as an agreement liquidating the damages to be recovered in case of breach.

It is well settled that the language used by the parties in framing such a clause in a contract is not controlling; that if a strict construction of the terms used would result in oppression, or in contravening the intention of the parties as gathered from the whole instrument, then the use of such words as "liquidated," or "fixed and settled" damages will not prevent the courts from inquiring into the actual damages sustained, and making compensation for such actual injury, the measure of damages for the breach.

When we examine the contract in this case, we find that there is an agreement by the appellants to pay $10 for every night performance and $5 for every afternoon performance of the play, till the sum of $3,000 should be paid, and that said payments should be made each week by post-office order or in some other way to be agreed upon.

Now the settled damage clause secures the performance of this agreement to pay these small sums of money each and every week, for the $5,000 is to be paid " in case of failure to perform any of the agreements of said sale." There can be no doubt that the sum to be paid and the time and manner of payment are essential and material " agreements of said sale."

So far as the damage clause applies to the breach of such parts of the contract, it is to be construed as a penalty; for it is settled by a substantial concurrence of the authorities that " where, by the terms of a contract, a greater sum of money is to be paid, upon default in the payment of a lesser sum, at a given time, both courts of law and equity will hold the provisions for the payment of the greater sum to be a penalty. And even where the parties stipulate for the payment of a sum certain on default of performance of an agreement, such stipulation will be treated as a penalty if the damages are not difficult of ascertainment." Tiernan v. Hinman, 16 Ill. 400; 1 Sutherland on Dam., 497; Scofield v. Tompkins, 95 Ill. 190.

There is in the contract, however, a stipulation for the breach of which damages would be uncertain and difficult to fix; that is the agreement to use the name of the party of the second part as the author of the play, and print the same upon their play bills and advertisements. This seems to be an unimportant and merely incidental stipulation, and it is difficult to conclude that it was the true meaning and intent of the parties to make $5,000 the measure of its breach. But the fact that the breach of it as well as the breach of the money agreements in the contract, is covered by the damage clause, does not compel the construction of said clause as liquidating the damages. The rule is that " where a party agrees to do several things, one of which is to pay a sum of money, and in case of a failure to perform any or either of

the stipulations agrees to pay a larger sum as liquidated damages, the larger sum is to be regarded in the nature of a penalty; and being a penalty in regard to one of the stipulations to be performed, is a penalty as to all." Cotheal v. Talmadge, 9 N. Y. 551; 1 Sutherland on Dam., 521.

It follows that under the terms of the contract the agreement to pay $5,000 must be treated as a penalty and that appellee, having introduced no evidence on the trial as to actual damages, was entitled to recover only nominal damages for breach of contract. As the case must be remanded for another trial, we will notice the clause of the agreement requiring the production of the play before the public, on or before October 1, 1885.

On a failure to so produce, the parties provided that the agreement of sale should become null and void, and the play should be returned. The play not having been produced, the terms of the agreement left none of the stipulations of it operative between the parties on which to maintain an action, except that for the return of the play. For the failure to so return, appellee can recover what the manuscript shall be shown to be reasonably worth.

The judgment of the Superior Court will be reversed and the case remanded.

*Reversed and remanded.*