GEORGE S. POPPERS

v.

MARY J. MEAGHER.

*Filed at Ottawa November 29, 1893.*

1. LANDLORD AND TENANT—*when notice is necessary to be given to terminate term.* Where a lease fixes the time for the expiration of the term, and provides that the tenant shall restore possession of the demised premises, the duty of the tenant to yield up the possession will not be dependent on a demand of possession, or upon any proceeding to be taken or thing done by the landlord.

2. SAME—*extension of lease.* The pendency of negotiations for a lease of demised premises, under an agreement to extend the term of the original lessee, which fail and are abandoned, will not justify the lessee in holding over, so as to relieve him from his covenant to yield up to the lessor the possession of the premises at the end of the term, even though the original lessor may have received a check for the first month's rent, pending such negotiation, which was returned on the failure of the parties to consummate the new lease.

3. SAME—*tenant holding over—liquidated damages.* A lease of property on a monthly rental of $500 provided that on the determination thereof, by lapse of time, or otherwise, the lessee should yield up the immediate possession of the premises to the lessor, and in case of failure to do so the lessee should pay, as liquidated damages for the whole time such possession should be withheld, the sum of $30 per day. The lessee held over one hundred and five days, and the proof showed that the rental value of the premises was $7000 a year: *Held,* that the lessor was entitled to recover and collect from the lessee the sum fixed in the lease as liquidated damages.

4. CONTRACT—*liquidated damages as a penalty.* Where, by the terms of a contract, a greater sum of money is to be paid upon default in the payment of a lesser sum at a given time, the provision of the payment of the greater sum will be held a penalty. And where, by the terms of a contract, the damages are not difficult of ascertainment, and the stipulated damages are unconscionable, the stipulated damages will be regarded as a penalty. Within these two rules parties may agree upon any sum as compensation for a breach of contract.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

Appellee brought suit against appellant on the covenants of a lease, which, by its terms, expired on April 30, 1889, to recover liquidated damages for holding over. The lease was for a monthly rental of $500, and contained, among other covenants, the following:

"*Eighth*—At the termination of this lease, by lapse of time or otherwise, to yield up immediate possession to said party of the first part, and failing so to do, to pay as liquidated damages for the whole time such possession is withheld, the sum of $30 per day."

A trial was had before the judge, a jury being waived, which resulted in a finding and judgment for plaintiff in the sum of $3150. Three several propositions were presented by appellant to be held as law by the trial court, which were refused, and a motion for new trial being overruled, the defendant appealed to the Appellate Court for the First District, where the judgment was affirmed. He now brings the record to this court, and assigns for error the judgment of the Appellate Court affirming that of the circuit court.

That the tenant remained in possession after the expiration of the lease according to its terms, is not a controverted fact. In the circuit court and before the Appellate Court there was contention as to the length of time such possession after the expiration of the lease continued, and that contention is urged in the argument of appellant here. The finding of the trial court was, that the holding over was for the period of one hundred and five days, and the damages were assessed and judgment rendered for that time, at the amount liquidated by the terms of the contract. That finding of fact was affirmed by the Appellate Court. It is claimed by appellee that the damages as found by the court are excessive.

It is insisted by appellant that appellee is estopped from claiming any rent or penalty or liquidated damages against him for holding over for any time prior to a demand for possession. That estoppel is claimed to result from the fact

13—148 ILL.

that between the middle of May and the 28th day of June, after the expiration of the lease from appellee to appellant, which expired April 30, the Grand Rapids Furniture Company, assuming to act as a corporation, sought to lease from appellee the premises occupied by appellant. The negotiations between the Grand Rapids Furniture Company and appellee were conducted through their respective agents, and reached a stage where a lease, with duplicate copy, was drawn by appellee's agent, who was subsequently applied to by the agent of the acting corporation for leave to take the lease and submit it to the attorney of the corporation. The lease was not signed by appellee, and was taken by the agent of the corporation, under those representations, from the office of appellee's agents. The negotiations for this lease by the corporation looked to the fact that the signing of the lease was to be a delivery of possession, and that the corporation, if the arrangements were consummated, was to procure possession. It was also contemplated that if the contract was finally entered into, the corporation was to pay rent from May 1, and appellee was to have certain repairs and improvements made on the premises, to the amount of $1000, after the corporation obtained possession, and the Grand Rapids Furniture Company was to expend $1000 in certain repairs and improvements after obtaining possession, as part of the rental and in addition to the monthly payments of rent. At the time of taking the unsigned leases to submit the same to the attorney, the agent of the corporation said he would have them signed and return them the next day, and then said he would pay the May rent, and paid appellee's agents $416.66, and took their receipt, as follows:

"$416.66.                     Chicago, *May 28, 1889.*

"Received of Grand Rapids Furniture Co., check for four hundred and sixteen and 66-100 dollars, being rent for month of May for building Nos. 136 and 138 W. Madison St.

                                 Baird & Bradley."

The leases were never returned to appellee or her agents, never signed by appellee, and the negotiations never reached a final conclusion. The return of the leases was frequently requested, but that was never complied with. The leases, as written out and taken by the agent of the corporation to submit to its attorney, covenanted against sub-letting, or against occupancy by any other person or persons than the corporation, and against assignment of the lease.

On July 10, 1889, the Grand Rapids Furniture Company, by a resolution of its board of directors, determined to abandon all negotiations for a lease of the premises, and in accordance with that resolution an agreement was entered into by the corporation with appellee, through her agent, reciting that "the negotiations had never been completed, and which second party, owing to a change in its affairs, was unable to complete," and a return of the $416.66 was made. Appellant claims that during those negotiations he contracted to sell his stock of goods to the Grand Rapids Furniture Company, and a bill of sale was made and deposited with the attorney of that corporation as an *escrow*, and by an arrangement between the corporation and himself he remained in possession, and claims to have paid rent to the corporation for the months of May, June and July. Appellant claims that he was informed by appellee's agents· of these negotiations with the corporation. This is denied by appellee's agents, and it is not controverted that appellant was an objectionable tenant to appellee, and knew that fact, and admitted that he believed he could not procure an extension of the lease to him. Appellee urges that the proposed negotiations were a scheme on the part of the Grand Rapids Furniture Company and appellant to extend time of possession of appellant without incurring the liability for the amount of liquidated damages for holding over.

On appellant's theory of estoppel he asked the court to hold two propositions as law, as follows:

"If the court believes, from the evidence, that at or about the time of the expiration of the lease from plaintiff to the defendant in question, the plaintiff, by her agents, entered into negotiations with the Grand Rapids Furniture Company for a lease of the premises in question from plaintiff to said company, and that a draft of such lease was prepared and given to the agent of said company for execution by said company, and to be returned to the plaintiff, duly executed by said company, the next day, and that said company then paid to the agent of plaintiff the sum of four hundred and sixteen and 66-100 dollars ($416.66), the amount of rent in and by said draft of said proposed lease provided for the month of May, 1889, and received from said agent of plaintiff the receipt given in evidence for said sum of money, and that the defendant was informed of said negotiations, and of the acceptance of said rent for said month of May by said plaintiff's agents from said company, and that while said negotiations were pending between the plaintiff and said company the defendant remained in the possession of said premises with the consent of said company, and without any demand having been made by the plaintiff upon the defendant for the possession of said premises, and that the defendant paid the rent for said premises to said company for the months of May, June and July, 1889, and that the defendant had no notice that said negotiations between the plaintiff and said company had been declared off before the defendant paid the rent for the month of July, 1889, and that no demand had been made, by or on behalf of the plaintiff, upon the defendant, for the possession of the said premises prior to the latter part of July or the first day of August, 1889, then, as a matter of law, the plaintiff is not entitled to recover any damages against the defendant for holding possession of said premises for the time prior to the making of such demand, although, in fact, such proposed lease was never, in fact, executed by said company."

"If the court believes, from the evidence, that about the middle of May, 1889, the Grand Rapids Furniture Company made an application to the plaintiff's agents for a lease of the premises in question while the defendant was in possession thereof, and that said plaintiff's agents informed the representative of said company making said application that the plaintiff had a tenant there that she or her agents had some trouble with, and that in case said application was accepted it would have to be with the understanding that the issuing of a lease would be giving possession of the premises; that said agents could not guarantee to put said company into possession, and that said company must take it in that way; that if he wanted to take the chances of litigation with the defendant to oust him, well and good; and if the court further believes, from the evidence, that said company made its application for said lease upon those conditions, and upon the condition that it was to pay the rent for said premises from May 1, 1889, and that the representative of said company informed said plaintiff's agents that he thought he could arrange with the defendant to buy him out, and that thereupon said company, by its representative, paid to said plaintiff's agents the rent for the month of May, 1889, and took away with him the draft of the lease offered in evidence, with the promise, on his part, that said draft of said lease should be executed by said company and returned to plaintiff, duly executed, the day following; and if the court further believes, from the evidence, that the defendant was informed of said negotiations between the plaintiff's agents and said company, and that thereupon an arrangement was made by the defendant and said company, whereby the defendant, in good faith, agreed to sell and said company agreed to buy the stock of furniture of the defendant in said premises, and that it was agreed between said company and the defendant that he should remain in possession of said premises until said purchase of said stock of furniture by said company, and during

such occupancy pay the same rent that said company was to pay said plaintiff, and that in pursuance of such agreement the defendant did pay said company such rent for the months of May, June and July, 1889, before the defendant had any notice or knowledge of the arrangement subsequently made, whereby the plaintiff's agents paid back the rent which said company had paid to them, as shown by the evidence, and that no demand was made, by or on behalf of the plaintiff, upon the defendant, for the possession of said premises prior to the latter part of July or first day of August, 1889, then, as a matter of law, the plaintiff is not entitled to recover any damages against the defendant for holding the possession of said premises for the time prior to the making of such demand."

These propositions were refused by the court, which is assigned as error.

The appellant insists that the amount fixed as liquidated damages is a provision for a penalty, and not the measure of damages, and on this theory asked the court to hold as follows:

"The provision in the lease from the plaintiff to the defendant, offered in evidence, providing that in case of the defendant failing, at the termination of said lease, by lapse of time or otherwise, to yield up immediate possession of the premises to the plaintiff, he should pay, as liquidated damages, for the whole time such possession is withheld, the sum of $30 per day, under the evidence in this case must be held to be a provision for a penalty, only, notwithstanding the language 'liquidated damages' is used, and that, under the evidence in the case, the plaintiff is entitled to recover only such actual damages as the evidence shows the plaintiff sustained by reason of the failure of the defendant to yield up the possession of said premises at the expiration of said lease."
—Which was refused by the court, which is also assigned as error.

It is further urged by appellant that "the court erred in his ruling on the cross-examination of appellee's witness Mr.

Warner." Warner testified, on his direct examination, that the rental value of the premises during the withholding thereof was at the rate of $7000 per annum. On cross-examination, to show that this estimate was erroneous, appellant's counsel inquired as to the rental value fixed in the agreement for a lease between Warner and Newberry, but the court sustained appellee's objection to the question. On his direct examination he testified that appellant had paid appellee no rent from April 30, 1889. On cross-examination he swore that some one else, however, did pay him rent, and he was asked who it was that paid him the rent, but the court sustained appellee's objection to the question.

Mr. JOHN P. AHRENS, for the appellant:

The arrangement made between Warner, as the agent of appellee, and Newberry & Poppers, created an estoppel against appellee to claim any rent or penalty for holding over from appellant for any time prior to a demand by appellee upon appellant for possession. *Griffin* v. *Knisely*, 75 Ill. 411.

The provision in the lease for the payment of $30 per day for the time that appellant might hold over, was a provision for a penalty, only, and appellee should, in any event, have been permitted to recover only actual damages, which, under the evidence, were only the rental value of the premises during the time they were withheld. *Bryton* v. *Marston*, 33 Ill. App. 211; *Tierman* v. *Hinman*, 16 Ill. 400; *Scofield* v. *Tompkins*, 95 id. 190; 1 Sutherland on Damages, 497; Sedgwick on Damages, 492; *Klingle* v. *Ritter*, 54 Ill. 140; *Otto* v. *Jackson*, 35 id. 349.

Messrs. EASTMAN & SCHUMACHER, for the appellee:

A sub-tenant is chargeable with notice of the usual clauses in the lease of his landlord, and is bound to inquire as to the terms of his landlord's lease. Taylor on Landlord and Tenant, (7th ed.) sec. 110, note 2; *Gaskill* v. *Ball*, 13 Law Rep. 327.

Mr. JUSTICE PHILLIPS delivered the opinion of the Court:

The lease determined the expiration of the term, and by its provisions, at its termination, by lapse of time or otherwise, it was the duty of the tenant to yield up possession to the landlord. That duty was not dependent on a demand for possession, or any proceedings to be taken or done by the landlord. A demand for possession would be necessary as a condition precedent to the right of recovery in forcible detainer, but not necessary to determine the term of a lease for a fixed period. By the covenant in his lease appellant agreed to deliver possession on its termination, and failing to do so, further covenanted that he would pay, as liquidated damages for the whole time such possession was withheld, the sum of $30 per day. That the appellant held over after the termination of the lease is not a controverted fact. The length of time of such holding over was a question of fact, which was determined by the trial court to be for a period of one hundred and five days. That finding of fact was affirmed by the Appellate Court, and we are therefore precluded from examining the record as to that question. The time appellant retained possession after the expiration of his lease according to its terms, must, for all purposes in this court, be taken as one hundred and five days.

The negotiations between the Grand Rapids Furniture Company and appellee were never consummated. The lease prepared by appellee's agent, and taken for examination to the attorney of the corporation, was not signed by appellee, and the only money paid to her or her agent was the $416.66 evidenced by the receipt. The proceedings of the board of directors of that corporation show the contract of leasing was not completed, and show the abandonment of all negotiations for the leasing. The evidence in the record shows the negotiations never reached a final conclusion,—that the corporation never acquired any right over the premises. The money

paid, however it may be named in the receipt, can, from all the facts appearing in the record, only be regarded as a deposit looking to the consummation of the contract, which, if completed, was to be credited as rent, but otherwise to be returned, and which was returned when the negotiations were finally abandoned. The evidence is contradictory as to whether the agents of appellee informed appellant that the premises were leased to the corporation, but from all the facts we are led to the belief that no such conversation took place, and no such information was conveyed to appellant by appellee or her agents. The corporation never having acquired any interest in the premises, had no power to lease the same or consent to appellant holding over. The testimony of appellant is, that he did not believe he could procure an extension of his lease, and the evidence shows that he was objected to as a tenant by appellee.

The lease proposed to be made, and as drawn, in the negotiations between appellee and the Grand Rapids Furniture Company, covenanted against sub-letting, against assignment of term, and against allowing occupancy by any other person. We do not deem it important to discuss the question as to the extent a sub-tenant is bound to inquire, and is chargeable with notice, as to his landlord's lease, as it must be held, from the facts appearing in this record, the Grand Rapids Furniture Company never acquired any right in the premises, as tenant or otherwise, and appellant could acquire no rights by reason of any contract with that corporation,—that no estoppel resulted, as against appellee, from the negotiations between herself and the corporation. This discussion of the evidence is had to determine the correctness of the rulings in refusing propositions asked by defendant.

The first proposition asked by appellant proceeded upon the theory that notice of the negotiations, and the payment evidenced by the receipt, and the subsequent payment of rent to the corporation by appellant, and the consent of the com-

pany to his remaining in possession, would defeat plaintiff's right of recovery.· The corporation having acquired no rights by concluding the contract, could neither accept rent nor consent to defendant's remaining in possession to the prejudice of plaintiff's rights, and any notice of the negotiations or the payment mentioned in the receipt would not be sufficient to authorize the defendant to assume a leasing. He could easily have inquired as to whether a lease had been made, and learned the truth as to that question. He could acquire no rights by reason of mistake or credulity. It was not error to refuse the first proposition asked by defendant.

The second proposition asked by the defendant proceeds upon the same theory as the first, with the additional statement therein, that if the defendant, having notice of the negotiations, by an arrangement between himself and the corporation agreed to sell his stock of furniture to that company, which consented that he should remain in possession and pay rent to it, the plaintiff would not be entitled to recover. This proposition· is objectionable for all the reasons made to the first, and has no additional force by reason of any proposed transaction between appellant and the corporation, and it was not error to refuse to hold the same as law.

It is then urged that the provision in the lease for the payment of $30 per day for the time that appellant held over was a provision for a penalty, only, and appellant should not be permitted to recover more than actual damages, which, it is claimed, is not more than the rental value for the time withheld. Counsel rely upon *Bryton* v. *Marston*, 33 Ill. App. 211, *Tiernan* v. *Hinman*, 16 Ill. 400, *Scofield* v. *Tompkins*, 95 id. 190, *Klingle* v. *Ritter*, 54 id. 140, and *Otto* v. *Jackson*, 35 id. 349, as sustaining that contention.

. *Bryton* v. *Marston*, *supra*, was a case where a certain drama was copyrighted by Marston, and he sold his interest therein to Salisbury and Bryton for the sum of $3000, upon the condition that on the delivery of the manuscript and acting parts

of the play the purchasers were to pay the author $200, and the further sum of $10 per night for each and every actual performance of said play in any theater, and $5 for each afternoon or matinee performance, until said sum should aggregate the sum of $3000, when the absolute right to such copyrighted drama should be in the purchaser. There were other conditions to the contract, and it was then provided that "in any case of failure to perform any of the agreements of said sale, the parties bind, each unto the other, in the sum of $5000 as fixed and settled damages, to be paid by the failing party or parties." Suit was brought on this last clause, and it was held that the clause as to settled damages was to be construed as a penalty, as it was a provision for the payment of a greater sum upon default in the payment of a lesser sum. The real *gist* of the contract in that case was the sale of a copyrighted drama for a consideration of $3000, which was to be paid in a specified way and on certain conditions, and when that sum was paid the seller had no further right or interest, pecuniarily, in the drama. For a non-compliance with the terms of sale thus made, a gross sum of $5000 was fixed as settled damages. Under this state of facts it may well be held that such greater sum,—so much greater than the price to be paid,—was a penalty, recoverable as the damages might be shown by the evidence.

*Tiernan* v. *Hinman, supra,* was a case where a mortgage was made to secure notes payable at different times, covering a period of several years, and without interest, and the mortgage provided for a right to declare the whole sum due on a failure to pay any one of the installments on the day it became due. One installment became due and a sale was advertised, when the debtor tendered the amount of the installment, with interest and costs then accrued. That sum was accepted, with the stipulation that its acceptance should not prejudice the creditor in any rights by reason of non-payment when due. The court held the proviso in the mortgage, that the whole

sum should become due upon failure to pay any one of the installments on the day when due, was in the nature of a penalty, and announced the rule, that "when, by the terms of a contract, a greater sum of money is to be paid upon default in the payment of a lesser sum at a given time, both courts of law and equity will hold the provision for the payment of the greater sum to be a penalty. And even where the parties stipulate for the payment of a sum certain on default of performance of an agreement, such stipulation will be treated as a penalty, if the damages are not difficult of ascertainment."

In *Scofield* v. *Tompkins et al. supra,* the appellant had sold appellees certain lands at an agreed price of $22,770, to be paid within one year, and on default in making such payment the seller might declare the contract null and void, and have the right to retain any money paid, and might sue for and recover the purchase price unpaid as liquidated damages, and brought suit to recover the whole price of the land. On this state of facts it was held: "Appellant has the land, and by this action seeks to recover its full price and also retain the land. It is manifest that his actual loss can not be equal to the value of the land. If it was worth nothing, then appellees agreed to pay this large sum for what was of no value. If it was worth that sum, then appellant has land of that value, unless its market price has depreciated, and if depreciated, then his loss is only commensurate with the depreciation. It is therefore clear that his loss is not equal to the sum named as liquidated damages. The fact that the parties fixed a sum to be paid, and called it liquidated damages, does not always control the question as to the measure of the recovery for a breach of the contract. Courts will look to see the nature and purpose of fixing the amount of damages to be paid, and if the clause fixing the amount of the damages appears to have been inserted to secure prompt performance of the agreement, it will be treated as a penalty, and no more than the actual damages proved can be recovered." It is further said in that

case : "It is true, the parties are authorized to agree upon any sum as compensation for a breach of the contract which does not manifestly exceed the amount of the injury suffered. This is believed to be the doctrine of the courts, and to be well sustained by authority." But it was held in that case that the sum fixed was greatly above all damages that could have been sustained by a breach of the contract.

*Klingle* v. *Ritter, supra,* was a leasing of certain premises for four months, from the first of March, 1867, at a rental of $50 per month, and the lessee to have the use of a beer cave, ice cellar and stable until the first of October, with the necessary use of engine, boiler, etc., not later than the middle of September, and the lessee covenanted to pay $50 per day as stipulated damages for every day he should hold over after the termination of his lease, and appellee became security for the performance of the lessee's covenants. Suit was brought on the lease, and a demurrer interposed to the declaration. The court held the provision as to damages was so highly penal as to seem unconscionable, and it was susceptible of two constructions : one, that the lease would terminate on the first of July ; and the other, on the first of October ; and the lease did not advert to the fact that the right of occupancy would expire at different dates as to different portions of the premises, and held the demurrer was properly sustained.

*Otto* v. *Jackson, supra,* did not provide in the lease for liquidated damages, but held where there was a holding over, the action being brought against a guarantor of the lessee, that he would perform his covenant and deliver possession at the end of his term, the measure of damages during the term the lessor is kept out of possession is, presumptively, the amount of rent stipulated in the lease, computed according to the time of holding over.

The rules deducible from these cases may be stated : First, where, by the terms of a contract, a greater sum of money is to be paid upon default in the payment of a lesser sum at a

given time, the provision for the payment of the greater sum will be held a penalty; second, where, by the terms of a contract, the damages are not difficult of ascertainment according to the terms of the contract, and the stipulated damages are unconscionable, the stipulated damages will be regarded as a penalty; third, within these two rules parties may agree upon any sum as compensation for a breach of contract.

The evidence in this case shows the premises occupied by appellant were occupied at a rental of $500 per month, on a contract made long before that time. The testimony of the witness who was looking after the business of appellee, states the property was worth $7000 per annum. As a general rule, it is only at particular seasons that property is in frequent demand for rent, and where property situated in a city is not rented at a season when there is a demand, it may for a long time remain idle. Hence it is important that the time when the landlord may deliver possession to another tenant may be certain. It is within the province of the parties to determine the amount of compensation as stipulated damages for holding over beyond the term of the lease. The amount fixed in this case is not unconscionable, and is reasonable, under the evidence. The damages assessed by the trial court were not excessive, and it was not error to refuse to hold the third proposition asked to be held by appellant.

The questions asked the witness Warner on cross-examination were on a subject matter not brought out on examination in chief, and it was not error to sustain the objection to those questions. It appears, however, that when that witness was called in rebuttal the entire matter was inquired about, except as to rental to be paid by the corporation. The rental value fixed in the lease to the corporation was not evidence to fix the rental value to determine damages in holding over under this lease, with liquidated damages.

We find no error in the record, and the judgment of the Appellate Court is affirmed.          *Judgment affirmed.*